IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BALAND,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED INDIAN HEALTH SERVICES, INC., CHARLENE STORR, FLORINE BATES, FARREL STARR, EVERETT MYERS, ELLEN DURFEE, KENNETH ROGERS, RICHARD MYERS, LAURA BORDEN, JOY SUNDBERG, CHERYL SEIDER, VELVA ANGELL, and DOES 1 through 50,<br><br>   Defendants.<br>_____ /<br>ROBERT DAVIS,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED INDIAN HEALTH SERVICES, INC., CHARLENE STORR, FLORINE BATES, FARREL STARR, EVERETT MYERS, ELLEN DURFEE, KENNETH ROGERS, RICHARD MYERS, LAURA BORDEN, JOY SUNDBERG, CHERYL SEIDER, VELVA ANGELL, SERENA BROOKS, and DOES 1 through 50,<br><br>   Defendants.<br>_____ / | No. C 16-06057 WHA<br>No. C 16-06058 WHA<br><br><br><br><br><br><br><br><br><br><br>**ORDER REMANDING CASES AND AWARDING CERTAIN FEES AND COSTS** |

**INTRODUCTION**

In these related actions asserting various state-law claims involving the termination of plaintiffs' positions as executives of a health services corporation, defendants move to dismiss both actions. Plaintiffs move to remand both actions to state court and seek to recover attorney's fees and costs incurred in seeking remand. For the reasons stated below, the motions to remand are **GRANTED**, and plaintiffs are entitled to recover some attorney's fees and costs. The motions to dismiss are reserved for the state court upon remand.

**STATEMENT**

Defendant United Indian Health Services, Inc., was and remains a California non-profit corporation with its principal place of business in Humboldt County. It received federal funds subject to certain regulation. The complaints in the instant actions fail to allege what services United Indian specifically offered, but both sides agree United Indian provided health services to Native American communities. Plaintiff Richard Baland worked as the chief financial officer of United Indian, and plaintiff Robert Davis worked as its chief executive officer.

In November 2013, third-party John Lott, the corporate compliance officer of United Indian, began to investigate overspending at United Indian. Throughout his investigation, he grew concerned about fraud, self-dealing, and misappropriation of federal funds, among other misconduct by members of the board of directors of United Indian. Lott, together with Baland and Davis, further investigated these concerns and reported their findings to the board of directors and then to the federal government. In July 2014, the board of directors of United Indian terminated Baland, Davis, and Lott.

In July 2016, Baland and Davis, who are represented by the same counsel, commenced actions in Humboldt County Superior Court against United Indian and several board members and employees. The complaints allege various state-law claims relating to their termination, generally contending that defendants conspired to wrongfully terminate them in retaliation for their whistleblowing activities. No federal claims for relief are asserted. In October 2016, defendants removed both actions to federal court here in San Francisco, purportedly on the basis

of federal-question jurisdiction. The actions became related under our local rules and both assigned to the undersigned judge.

Baland and Davis each now move to remand. Defendants move to dismiss. The briefs in each action are nearly identical and raise the same issues. Accordingly, this order jointly addresses the remand motions, following full briefing and oral argument.

**ANALYSIS**

Plaintiffs move to remand these actions to Humboldt County Superior Court, contending that their complaints do not raise federal questions. (The parties are not diverse.) They also seek their reasonable attorney's fees and costs incurred as a result of the removal. Defendants move to dismiss, arguing that United Indian and the individual defendants are immune from suit and that plaintiffs failed to properly serve process. This order finds that removal was improper, that defendants lacked any objectively reasonable basis to seek removal, and that plaintiffs should recover attorney's fees and costs as stated below. Inasmuch as the Court lacks subject-matter jurisdiction, this order only rules on plaintiffs' motions, and reserves decision on defendants' motions to dismiss to the state court on remand.

**1.    REMAND.**

A defendant may remove a civil action from state court to federal court if original jurisdiction would have existed at the time the complaint was filed. 28 U.S.C. 1441(a). The presumption against removal jurisdiction means that the defendant bears the burden of establishing proper removal. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

Under the "well-pleaded complaint" rule, federal-question jurisdiction exists only where the federal question appears on the face of the complaint. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Thus, the relevant inquiry for making this jurisdictional determination is to examine the specific claims made by our plaintiffs and decide if they are under federal or state law. Federal jurisdiction is not conferred by the assertion of a defense or counterclaim that arises under federal law. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831–32 (2002).

3

Generally, the defense of federal preemption does not confer federal jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987). When, however, a "federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Additionally, federal subject-matter jurisdiction may be conferred where a "contested and substantial federal question" is "embedded" in the state-law claims. *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308, 313 (2005).

Defendants contend that they are immune from suit under the federal common law concept of tribal sovereign immunity. They contend that tribal sovereign immunity is embedded in each of plaintiffs' claims because they arise out of plaintiffs' relationship with an allegedly immune sovereign entity, but they do not explain how the *claims* so rely. Defendants assert, without citing authority, that "the issue is more than a mere defense" (Defs.' Opp. at 3). They frame immunity as "the disputed and substantial federal issue of contracting or working for a sovereign entity" (*id.* at 4). Regardless of how defendants frame the federal issues that could arise in this case, they remain federal *defenses*.

In *Oklahoma Tax Commission v. Graham*, 489 U.S. 838 (1989), Oklahoma sought to collect taxes on cigarette sales and gambling receipts from an Indian tribe, and filed a complaint in state court. This occurred prior to the Supreme Court's decision in *Caterpillar*, which clarified that the defense of federal preemption does not confer federal jurisdiction. The tribe removed the action, claiming the complaint implicated the federal question of tribal immunity. The district court denied the motion and the Tenth Circuit affirmed, holding that a claim against an Indian tribe included as a necessary element an alleged waiver of tribal sovereign immunity or consent to be sued.

The Supreme Court vacated the appellate decision and remanded for reconsideration in light of *Caterpillar*. The Tenth Circuit reinstated its decision, notwithstanding *Caterpillar*, holding that the federal question of sovereign immunity was inherent within the complaint by virtue of the parties' identity. The Supreme Court reversed, holding the decision "plainly

4

inconsistent with *Caterpillar*." *Id.* at 842. The fact that tribal sovereign immunity might have ultimately provided a complete defense did not convert the claims into a federal question.

Earlier this year, months before these actions were removed, our court of appeals confirmed in a *dictum*, citing *Oklahoma Tax Commission*, that "A tribal immunity defense does not provide an independent basis for federal jurisdiction." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1023 n.16 (9th Cir. 2016).

The defense brief did not address *Oklahoma Tax Commission* at all. That brief referenced *Bodi* as a basis for the objective reasonableness of removal, as follows (Defs.' Opp. at 6 (citing *Bodi*, 832 F.3d at 1022–23)):

> As highlighted in *Bodi*, "[t]here are reasons why a tribe may prefer to litigate in federal court," including the "experience, solicitude, and hope of uniformity that a federal forum offers on [such] federal issues."

This quote omitted the most important part of *Bodi* for our purposes. The excerpted passage, in fact, actually read as follows:

> There are reasons why a tribe may prefer to litigate in federal court. "[T]ribal immunity 'is a matter of federal law,'" *Bay Mills*, 134 S.Ct. at 2031 (quoting *Kiowa Tribe*, 523 U.S. at 756, 118 S.Ct. 1700), and, as such, tribes may wish to avail themselves, when possible (footnote 16), of the "experience, solicitude, and hope of uniformity that a federal forum offers on [such] federal issues," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (discussing removability of claims "implicat[ing] significant federal issues"); see *Contour Spa*, 692 F.3d at 1207 (recognizing that tribes "have an interest in a uniform body of federal law in [the] area" of tribal immunity).

*Bodi*, 832 F.3d at 1022–23. In other words, the defense brief skipped over the text referencing footnote 16, which footnote stated the critical point for our case:

> A tribal immunity defense does not provide an independent basis for federal jurisdiction. *See Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (per curiam). The Tribe in this case was instead able to access a federal forum to litigate its immunity defense because Bodi's FMLA claim provided for original federal jurisdiction.

The defense brief ignored footnote 16 altogether. This deliberate sleight of hand is and remains a disappointment to the Court.

5

When pressed at oral argument to explain how defendants could get around this clear statement of circuit law in *Bodi*, counsel cited *J.L. Ward Associates v. Great Plains Tribal Chairmen's Health Board*, 842 F. Supp. 2d 1163 (D.S.D. 2012). But *Ward* did not involve removal at all. Rather, as defense counsel eventually conceded, the decision simply discussed the standard for the application of the tribal sovereign immunity defense. Whether or not our defendants may ultimately prevail under the standard discussed in *Ward* (or otherwise) is irrelevant, inasmuch this Court lacks jurisdiction to resolve that federal defense.[1]

Defendants alternatively claim that plaintiffs' claims for discrimination necessarily raise a federal issue, inasmuch as United Indian receives federal funds to provide health care under the Indian Self-Determination and Education Assistance Act. Section 5307(b) of Title 25 of the United States Code (part of the ISDEAA) provides that "Indian organizations . . . shall require that to the greatest extent feasible . . . preferences and opportunities for training an employment in connection with the administration of [federal] contracts or grants shall be given to Indians." Defendants contend that Section 5307(b) is an integral part of any discrimination claim, but again, it simply provides a possible defense.[2]

Indeed, in *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188–89 (9th Cir. 1998), our court of appeals held that the ISDEAA and other protections from discrimination claims against Indian tribes do not confer federal jurisdiction.

Finally, defendants contend the claims herein are completely preempted by Title 25 of the United States Code, which generally addresses Indian law. Complete preemption applies where the law is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it . . . because the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (citations omitted).

---

[1] At oral argument, defense counsel described *Ward* as an "Eighth Circuit" decision, though it is in fact a decision from the District of South Dakota.

[2] Defendants cite this provision as 25 U.S.C. 450e(b), but Section 450e was moved to Section 5307 last year.

6

In *Oneida Indian Nation of N. Y. State v. Oneida County, New York*, 414 U.S. 661 (1974), the Supreme Court held that a claim to possession of Indian land conferred federal jurisdiction even though the claim had been brought under state law.  That was because "the right to possession itself is claimed to arise under federal law in the first instance," because "federal law now protects, and has continuously protected from the time of the formation of the United States, possessory rights to tribal lands, wholly apart from the application of state law principles which normally and separately protect a valid right of possession."  *Id.* at 675–77.  Accordingly, the complaint therein arose under federal law.

*Oneida* did not describe its holding as finding "complete preemption," but the Supreme Court later described *Oneida* as holding that "state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus completely preempted and arises under federal law."  *Caterpillar*, 482 U.S. at 393 n.8.  That is not our case.

Here, plaintiffs do not claim a right that arises under federal law in the first instance, such as a right to Indian land.  Rather, they seek to assert rights granted by the state, albeit against an alleged Indian tribal organization.  Certain provisions in Title 25 might provide a defense to those claims, but that does not establish complete preemption.

Defendants note that Title 25 of the United States Code includes laws governing healthcare, child welfare, cultural protections, land management, and contracts.  Thus, defendants argue, "Congressional intent is clearly to displace any state law on these topics" (Defs.' Opp. at 5).  Again, defendants cite no authority to support that expansive contention, and no decision has ever held that federal Indian law *completely* preempts state-law discrimination, employment, and contract claims.  Indeed, such a holding would be plainly inconsistent with *Oklahoma Tax Commission* and *Bodi*, which indicated that the presence of issues of Indian law did not always confer federal jurisdiction (as defendants here propose).

Defendants' unsupported theories are rejected.  Plaintiffs' motions to remand are **GRANTED**.

7

### 2. FEES AND COSTS.

Section 1447(c) of Title 28 of the United States Code authorizes the award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under [Section 1447(c)] only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Defendants contend they had an objectively reasonable basis for seeking removal, citing the statement in *Bodi* noting that there are reasons an Indian tribe may want to litigate in federal court. But, as stated, their citation of *Bodi* studiously omitted the statement of the law that directly contradicts defendants' position here, omitting that "A tribal immunity defense does not provide an independent basis for federal jurisdiction." Moreover, the facts of *Bodi* do not support their case. *Bodi* was removable simply because the complaint included a claim under the federal Family and Medical Leave Act. The issue on appeal was whether or not such removal constituted a waiver of tribal sovereign immunity. Our court of appeals held there was no waiver. To repeat, removal was not the issue. Nevertheless, *Bodi* reminded us that tribal sovereign immunity provided no basis for removal (in footnote 16).

The law is plain: The federal issues our defendants raise are federal defenses that do not confer federal jurisdiction. Indeed, defendants cite *not a single decision* that provides any support for their theory of removal. They come closest by eliding the contrary authority in *Bodi*. Defendants' removal here was entirely baseless. Furthermore, their sleight of hand relating to *Bodi* shows the knew their position was objectively unreasonable.

United Indian and many of our individual defendants lost on the issue of tribal sovereign immunity in Humboldt County Superior Court in an unrelated case in *Green v. United Indian Health Services, Inc.*, Humboldt County Superior Court No. DR 120103 (Mitlyng Decl., Exhs. 2–3). The California Court of Appeal denied United Indian's petition for a writ of mandate (*id.*, Exh. 4). That case ended in settlement, so it appears United Indian would not be estopped from relitigating the issue, but it is clear that our defendants' baseless removal was simply a gimmick

8

to flee a forum where they had already lost on a key issue, further demonstrating the extent of defendants' unreasonableness.

Defendants' citation to a related action, *United Indian Health Services, Inc. v. Julie Su*, No. 15-2151 (Dkt. No. 35) (E.D. Cal., Nov. 22, 2016) (Judge Troy L. Nunley), is unavailing. There, United Indian (the plaintiff there, a defendant here), filed an action in federal court seeking to enjoin investigations by federal agencies and seeking declaratory judgment that it was not subject to the agencies' jurisdiction. An order dismissed the action as lacking a justiciable case or controversy. The defendants (which included Baland and Davis, our plaintiffs) moved for sanctions under Rule 11. An order denied the request for sanctions, noting that United Indian filed the action before *Bodi* clarified that removal did not constitute a waiver of tribal sovereign immunity. Judge Nunley reasoned that United Indian faced the very predicament discussed in *Bodi*, namely, that it might be forced to raise its federal immunity defense in state court (at the conclusion of the agency investigations), but it might waive that defense by seeking removal (assuming it could do so properly). Thus, Judge Nunley held that United Indian's actions were reasonable in light of the pre-*Bodi* state of the law, then denied the sanctions motion.

Here, however, things are different. *First*, our case simply does not concern the issue of waiver. Rather, our case is about removal based on a federal defense — an issue settled long before *Bodi*, but restated in *Bodi*. *Second*, United Indian removed this action months *after* our court of appeals decided *Bodi*. Thus, the facts that led to the denial of the motion sanctions against United Indian's case in the Eastern District of California are completely distinguishable from the facts of our case.

It was simply unreasonable for United Indian to seek removal on the basis that this case involves federal issues, since those issues plainly arise only as defenses. Accordingly, this order finds plaintiffs are entitled to their reasonable attorney's fees and costs incurred as a result of remand.

Plaintiffs each contend that by the time this motion is resolved they will incur $10,850 in attorney's fees and expenses of $251.20 as a result of this removal. Attorney Linda S.

9

1  Mitlyng submitted a sworn declaration averring that she expects to bill 31 attorney hours at
2  $350 per hour, for a total of $10,850 in each action. Specifically, she avers she spent 19 hours
3  "defending the case" as of the time she filed the motion to remand, and that she expected to
4  spend seven hours "preparing the reply," one hour for her "court appearance," and three hours
5  of travel time (six hours in each direction, billed at half rate and split between the *Baland* and
6  *Davis* actions) from Eureka (Mitlyng Decl. ¶¶ 16–24). She also calculates travel expenses and
7  hotel accommodations at a total of $502.40, to be split between the actions (*id.* ¶ 25).

8  Defendants do not dispute the veracity of Attorney Mitlyng's declaration, except to call
9  the request "exorbitant." Nevertheless, Attorney Mitlyng's declaration fails to address whether
10 the fees incurred in "defending the action" included hours worked opposing defendants'
11 motions to dismiss, which work can be largely recycled on remand. More critically, Attorney
12 Mitlyng avers she spent 26 hours preparing the briefs in *each* matter (and thus seeks to recover
13 a total of 52 hours of fees for preparation between the two actions). But the briefs were nearly
14 identical, so it would have been unreasonable for Attorney Mitlyng to have billed each of our
15 plaintiffs for the entirety of the work done, rather than half. Our record is simply too bare to
16 determine the true amount of fees reasonably incurred.

17 While this order finds that plaintiffs are each entitled to their reasonable attorney's fees
18 and costs, since plaintiffs failed to provide an adequate sworn record to support the claimed
19 amount, this order awards the minimum amount in fees and costs that the Court can be certain
20 was actually expended between the two cases — four thousand dollars. That is, defendants
21 shall pay two thousand dollars in attorney's fees and costs to each of our two plaintiffs.

## CONCLUSION

For the reasons stated above, plaintiffs' motions to remand are **GRANTED**, and they are each entitled to two thousand dollars in attorney's fees and costs in each case, for a total of four thousand dollars to be paid by defendants. The Clerk shall please **REMAND** the action to Humboldt County Superior Court and **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: December 30, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10